

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

| | | |
|---|---|---|
| Paul E. Budlow<br>Assistant United States Attorney<br>Paul.Budlow@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4917<br>MAIN: 410-209-4800<br>FAX: 410-962-3091 |

June 18, 2019

Larry Allen Nathans, Esq.
Nathans & Biddle LLP
SunTrust Bank Building, Suite 1800
120 East Baltimore Street

  Re: <u>United States v Jake Tyler Patterson,</u>
     Criminal #: RDB-19-0101

Dear Counsel:

  This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, June 28, 2019, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

  1. The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b) (Count One). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offenses

  2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count One (Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b):</u>

That on or about the dates specified in Count One of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

a. Knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

b. The defendant believed that such individual was less than eighteen (18) years of age; and

c. That the Defendant could have been charged with a criminal offense for engaging in the specified sexual activity (including production and attempted production of child pornography as charged in Counts Two and Four of the pending indictment).

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Imprisonment | Maximum Imprisonment | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2422(b) | 10 years | Life | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of *Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is



nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

    g. Additional Special Assessment: The Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

### Sex Offender Registration

  4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

  5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses



in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e))

4

Rev. August 2018



and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

    a. A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those in Count One and Count 3. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

### Count 1 & Relevant Conduct – Coercion and Enticement:

    b. Each minor that was the victim of coercion and enticement counts as a separate group under U.S.S.G. §§ 1B1.1 & 3D1.2(d). There were 13 separate victims.

    c. The base offense level for coercion and enticement is 28 pursuant to U.S.S.G. § 2G1.3(a)(3).

    d. Pursuant to U.S.S.G. § 2G1.3(b)(2)(A), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct. (Subtotal: 30).

    e. Pursuant to U.S.S.G. § 2G1.3(b)(3)B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce or facilitate the travel of, the minor to engage in prohibited sexual conduct. (Subtotal: 32).

    f. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 34).

    g. Pursuant to U.S.S.G. § 2G2.3(c)(1), the guideline for production of child pornography is applied because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and the resulting offense level under § 2G2.1 is greater than 34.

### Relevant Conduct –Production of Child Pornography (John Doe 1 through John Doe 13):



        h.      Each minor that was the victim of coercion and enticement counts as a separate group under U.S.S.G. §§ 1B1.1, 3D1.2(d). There were 13 separate victims.

        i.      The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

        j.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

        k.      Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

        l.      Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal 38, for John Doe 1, 2, 4, 5, 9, and 10).

Grouping:

        m.      Pursuant to 3D1.4, there are at least 13 units, and the highest offense level (38) is increased by two (5) levels. (Subtotal: 43).

        n.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Subtotal: 40).

Chapter Four Enhancement:

        8.      Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal 45).

6



9. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

10. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c) (1) (C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a): a sentence of 150 months of imprisonment in the custody of the Bureau of Prisons and supervised release for life with the following conditions of supervised release:

a. You must not have direct contact with any child you know or reasonably should know to be under the age of 18 without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places. (This does not include minor family members, with whom Probation may approve direct contact in advance.)

b. You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

c. To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

d. You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

Rev. August 2018



12. This Agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release.

13. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

14. This parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Obligations of the United States Attorney's Office

15. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

16. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release):

8



c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

17.     a.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including:

i.      The following items originally seized by law enforcement authorities from the Defendant on December 14, 2018:

1. Apple iPhone 10 XS Max cell phone, S/N FFMXJD87KPHG.

c.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Rev. August 2018



## Restitution

18. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

19. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).



## Court Not a Party

20.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: *[signature]*

Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/22/19                                                         *[signature]*
Date                                                              Jake Tyler Patterson

Rev. August 2018

     I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

<u> 6/22/19 </u>  
Date

<u>              </u>  
Larry Allen Nathans, Esq.

12

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Jake Tyler Patterson ("Patterson"), age 21, is a resident of Adamstown, Maryland. As detailed below, Patterson induced at least thirteen minors to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct.

Starting in approximately fall 2017 Patterson set up an online profile on the Snapchat social media application, pretending to be a 15 or 16 year old female, who resided out of the state of Maryland ("false profile"). Using that profile, Patterson sought out minor males. Once Patterson established online relationships with the victims, he initiated sexually explicit conversations, and convinced the victims to produce and send sexually explicit images and videos of the victims' exposed genitals. As part of his inducement, Patterson sent sexually explicit files depicting the lascivious display of female genitals, including videos of a female masturbating her exposed genitals. Patterson also paid some of the victims with various gift cards, including Amazon, iTunes, Xbox, and PlayStation.

<u>Count 1: John Doe 1 (age 13, Michigan) [█████████]</u>:

John Doe 1 was a resident of Michigan and 13-years old during the offense. No later than December 2018, Patterson used his false profile to communicate with John Doe 1, and caused John Doe 1 to create and send sexually explicit videos to Patterson. On December 12, 2018, John Doe 1 sent four videos to Patterson that depicted John Doe 1 masturbating his exposed penis, and on December 14, 2018, John Doe 1 sent two videos to Patterson that depicted John Doe 1 masturbating his exposed penis.

<u>Relevant Conduct (John Doe 2): John Doe 2 (age 14, Texas) [█████████]</u>:

John Doe 2 was a resident of Texas and 14-years old during the offense. No later than December 2018, Patterson used his false profile to initiate an online relationship with John Doe 2. Patterson initiated sexual conversations with John Doe 4, and enticed John Doe 4 to create and send at least one sexually explicit image and video to Patterson. Patterson offered John Doe 2 payment with Amazon gift cards. On approximately December 12, 2018, John Doe 2 sent two videos to Patterson, both depicting John Doe 2 masturbating his exposed penis. On approximately December 14, 2018, John Doe 2 sent two videos to Patterson, both depicting John Doe 2 masturbating his exposed penis.

1



<u>Relevant Conduct: John Doe 3 (age 13, Maryland) []</u>:

John Doe 3 was a resident of Maryland and 13-years old during the offense. No later than July 2018, Patterson used his false profile to initiate an online relationship with John Doe 3. Patterson initiated sexual conversations with John Doe 1, and enticed John Doe 3 to create and send sexually explicit images to Patterson. Patterson sent John Doe 3 payment with a $50.00 PlayStation 4 gift card to entice John Doe 3 to send sexually explicit material and on another occasion, Patterson offered to send John Doe 3 payment with a $100 gift card but John Doe 3 did not accept it. In approximately July 2018, John Doe 3 sent several sexually explicit images to Patterson that depicted John Doe 3's exposed penis.

<u>Relevant Conduct: John Doe 4 (age 15, Maryland) []</u>:

John Doe 4 was a resident of Maryland and 15-years old during the offense. No later than July 2018, Patterson used his false profile to initiate an online relationship with John Doe 4. Patterson initiated sexual conversations with John Doe 4 and enticed John Doe 4 to create and send sexually explicit images to Patterson. Patterson offered to send John Doe 4 payment in the form of a $50 Xbox Live gift card to entice John Doe 4 to send sexually explicit material. In or around July 2018, John Doe 4 sent three pictures to Patterson that depicted John Doe 4's penis and/or John Doe 4 touching his own penis.

<u>Relevant Conduct: John Doe 5 (age 13, Colorado) []</u>:

John Doe 5 was a resident of Colorado and 13-years old during the offense. No later than December 2018, Patterson used his false profile to initiate an online relationship with John Doe 5. Patterson initiated sexual conversations with John Doe 5, and enticed John Doe 5 to create and send at least two sexually explicit videos to Patterson. Patterson offered to pay John Doe 5 to produce sexually explicit content and send it to him online. On approximately December 6, 2018, John Doe 5 sent two videos to Patterson; in one of these videos, John Doe 5 is depicted masturbating his exposed penis.

<u>Relevant Conduct: John Doe 6 (age 13, Maryland) []</u>:

John Doe 6 was a resident of Maryland and 13-years old during the offense. During the Summer 2018, no later than August 2018, Patterson used his false profile to initiate an online relationship with John Doe 6. Patterson initiated sexual conversations with John Doe 6, and enticed John Doe 6 to create and send at least one sexually explicit image and video to Patterson. Patterson offered John Doe 4 payment with Amazon gift cards. During the summer 2018, John Doe 6 sent one video and one image to Patterson that each depicted John Doe 6's exposed penis.



On multiple occasions, Patterson sent John Doe 6 $25.00 Xbox gift cards to entice John Doe 6 to send sexually explicit material.

<u>Relevant Conduct: John Doe 7 (age 14, Maryland)</u> [ ▮ ]:

John Doe 7 was a resident of Maryland and approximately 14-years old during the offense. No later than November 2018, Patterson used his false profile to initiate an online relationship with John Doe 7. Patterson initiated sexual conversations with John Doe 7, and enticed John Doe 7 to create and send at least one sexually explicit image to Patterson. In or around November 2018, John Doe 7 sent at least one image to Patterson that depicted John Doe 7's exposed penis.

<u>Relevant Conduct: John Doe 8 (age 14, Colorado)</u> [ ▮ ]:

John Doe 8 was a resident of Colorado and 14-years old during the offense. No later than December 2018, Patterson used his false profile to initiate an online relationship with John Doe 8. Patterson initiated sexual conversations with John Doe 8, and enticed John Doe 8 to create and send at least two sexually explicit images to Patterson. In or around December 2018, John Doe 6 sent approximately two sexually explicit images to Patterson that depicted John Doe 6's exposed penis.

<u>Relevant Conduct: John Doe 9 (age 13-14, Michigan)</u> [ ▮ ]:

John Doe 9 was a resident of Michigan and 13 and 14-years old during the offense. In approximately the fall 2017, Patterson used his false profile to initiate an online relationship with John Doe 9 and communicated with John Doe 9 up until the fall of 2018. Patterson initiated sexual conversations with John Doe 9 and enticed John Doe 9 to create and send sexually explicit images and videos to Patterson. Patterson sent John Doe 9 approximately 10 to 15 gift cards, in the amount of $50 to $100 each, to entice John Doe 9 to send more sexually explicit material. Between fall 2017 and fall 2018, John Doe 9 sent between 30 to 100 sexually explicit images and videos to Patterson, including at least 20 videos that depicted John Doe 9 nude and together with John Doe 10. These sexually explicit videos often included John Doe 10 touching John Doe 9 on the penis.

<u>Relevant Conduct: John Doe 10 (age 12-13, Michigan)</u> [ ▮ ]:

John Doe 10 was a resident of Michigan and approximately 12 and 13-years old during the offense. No later than the fall 2017, Patterson used his false profile to initiate an online relationship with John Doe 10. Patterson initiated sexual conversations with John Doe 10 and enticed John Doe 10 to create and send to Patterson. Patterson sent John Doe 10 approximately

3



10 to 15 gift cards to iTunes, Xbox, and Apple, totaling approximately $1,000 to entice John Doe 10 to send more sexually explicit material. Starting when John Doe 10 was the age of 12, John Doe 10 sent approximately 100 sexually explicit images and videos to Patterson, which included videos of John Doe 10 masturbating his exposed penis and John Doe 10 touching the penis of John Doe 9.

Relevant Conduct: John Doe 11 (age 14-15, Maryland) [█████████]:

John Doe 11 was a resident of Maryland and between 14 and 15-years old during the offense. No later than October 2018, Patterson used his false profile to initiate an online relationship with John Doe 11. Patterson initiated sexual conversations with John Doe 11, and enticed John Doe 11 to send sexually explicit images and at least one sexually explicit video to Patterson. Patterson sent John Doe 11 payment in the form of a gift card to iTunes, totaling approximately $25.00, to entice John Doe 11 to send the sexually explicit material. In or around October 2018, when John Doe 11 was either 14 or 15-years old, John Doe 11 sent approximately five sexually explicit images to Patterson that depicted John Doe 11's exposed penis, as well at least one sexually explicit video that depicted John Doe 11's exposed penis.

Relevant Conduct: John Doe 12 (age 12, Maryland) [█████████]:

John Doe 12 was a resident of Maryland and 12-years old during the offense. No later than December 2018, Patterson used his false profile to initiate an online relationship with John Doe 12. Patterson initiated sexual conversations with John Doe 12, and enticed John Doe 12 to create and send sexually explicit images of John Doe 12 to Patterson. Patterson offered John Doe 12 payment with a $50.00 Google Play gift card to entice John Doe 12 to send sexually explicit material but John Doe 12 never received this gift card. On approximately two or three occasions, in approximately December 2018, John Doe 12 sent sexually explicit images to Patterson that depicted John Doe 12's exposed penis.

Relevant Conduct: John Doe 13 (age 12, Maryland) [█████████]:

John Doe 13 was a resident of Maryland and 12 to 13-years old during the offense. Between approximately October 2018 and December 2018, Patterson used his false profile to initiate an online relationship with John Doe 13. Patterson initiated sexual conversations with John Doe 13 and enticed John Doe 13 to create and send sexually explicit images and videos to Patterson. Between approximately October 2018 and December 2018, John Doe 13 sent one sexually explicit video to Patterson that depicted John Doe 13's exposed penis and between five to ten images of John Doe 13 that depicted his exposed penis.

4



Patterson's Arrest and Interview:

On December 14, 2018, Patterson, was interviewed by law enforcement following his arrest and being advised of his *Miranda* rights. Patterson admitted to having an attraction to boys who were aged 14 to 16-years old. Patterson admitted that he created and used the fake profile, pretending to be a 16-year old female. Patterson further admitted that he contacted minor boys and induced them to create and send him sexually explicit images and videos. Patterson acknowledge that he paid the victims with various gift cards, which he purchased through Amazon. According to Patterson, he targeted boys aged 14 to 16-years old, but acknowledged that at least one victim was 13-years old. Patterson was able to recall the names and/or online usernames of eight minor victims.

Patterson's Amazon Account:

A review of Patterson's Amazon account shows 55 gift card purchases in the last 10 months totaling around $2,600.

Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:

Patterson knowingly used a mobile phone and the internet, and knowingly caused the minor victims to use their portable digital devices and the internet, to induce, entice and coerce the victims to engage in the above-reference sexual activity. The defendant therefore had reason to know that the images would be transported in interstate commerce, and that the images would be produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce. The use of the mobile phones and the internet constituted the use of a facility of interstate commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

6/22/19
Date

Jake Tyler Patterson

I am Mr. Patterson's attorney. I have carefully reviewed the statement of facts with him. He acknowledges it is true and correct and he knowingly and voluntarily agrees to it.

6/22/19
Date

Larry Allen Nathans, Esq.
Counsel for Jake Tyler Patterson

5